Filed 4/18/25  P. v Sullivan CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>KARENGHA SULLIVAN,<br><br>　　　Defendant and Appellant. | B334734<br><br>(Los Angeles County<br>Super. Ct. No. TA138490) |

　　　APPEAL from an order of the Superior Court of Los Angeles County, H. Clay Jacke, II, Judge.  Affirmed.

　　　Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

In 2016, Karengha Sullivan pled no contest to attempted murder. Years later, Sullivan petitioned for resentencing under Penal Code[1] section 1172.6, which limited accomplice liability for murder. Relying in part on the stipulated factual basis for Sullivan's plea, the trial court found that Sullivan was convicted as a direct aider and abettor and, as such, ineligible for resentencing. We agree and affirm the order.

## BACKGROUND

I.      Sullivan's plea to attempted murder

Based on a shooting in 2015, an amended felony complaint charged Sullivan with conspiracy to commit murder (§ 182, subd. (a)(1)), two counts of attempted murder (§§ 664, 187, subd. (a)), personal and principal gun use (§ 12022.53, subds. (b), (c), (d), (e)(1)), and a gang enhancement (§ 186.22, subd. (b)(4)). Four codefendants were also charged with crimes arising from the shooting.

In 2016, Sullivan pled no contest to one count of attempted murder and admitted a gang allegation.[2] At the plea hearing, Sullivan admitted the following facts as a basis for his plea: On March 7, 2015, Sullivan, Donald Wilson, Calvin Charles, and Quintell Foster "discussed committing a retaliatory murder against Athens Park Blood"; Wilson and Foster armed themselves with firearms; Sullivan and Charles got into "a follow

---

[1]     All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[2]     The trial court struck an allegation that the attempted murder was willful, deliberate, and premeditated.

car," and Foster and Wilson got into a "lead car"; the two cars drove together to Athens Park Territory; Sullivan and Charles drove the car to distract any type of law enforcement or rival gang members; shots were fired from Wilson and Foster's car at individuals in Athens Park territory (129th Street and San Pedro in Los Angeles County); the two cars that went into Athens Park territory attempted to flee after "completing [the] mission"; and after trying to flee, a SUV "shot at [the] car injuring" Sullivan and then shot at the car Foster was in, killing Foster but missing Wilson.

Defense counsel joined in and the court accepted the plea and the factual basis. The court then sentenced Sullivan to five years for attempted murder and 10 years for the gang enhancement on count 2.

## II.    Postconviction petition for resentencing

In 2022, Sullivan petitioned for resentencing under section 1172.6, and the trial court appointed counsel for him. The People opposed the petition on the ground that the record of conviction established that Sullivan was convicted as a direct aider and abettor.

At the September 21, 2023 hearing on the petition, the trial court found that the record of conviction, including the plea transcript, established that Sullivan was convicted as a direct aider and abettor. Accordingly, the trial court found that Sullivan failed to make a prima facie showing for relief and denied the petition.

3

## DISCUSSION

I.    Senate Bill No. 1437 and standard of review

To the end of ensuring a person's sentence is commensurate with the person's individual criminal culpability, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) and subsequent related legislation limited accomplice liability under the felony-murder rule, eliminated the natural and probable consequences doctrine as it relates to murder, and eliminated convictions for murder based on a theory under which malice is imputed to a person based solely on that person's participation in a crime. (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) As amended by Senate Bill No. 775, effective January 1, 2022, these ameliorative changes to the law now expressly apply to attempted murder under the natural and probable consequences doctrine and voluntary manslaughter.

Senate Bill 1437 added section 188, subdivision (a)(3), which provides that "to be convicted of murder, a principal in a crime shall act with malice aforethought" and malice "shall not be imputed to a person based solely on his or her participation in a crime." Under section 188, subdivision (a)(3), an accomplice no longer may be guilty of murder based on the mere determination the accomplice aided and abetted a target crime, and murder was a natural and probable consequence of that target crime. (See generally *People v. Reyes*, *supra*, 14 Cal.5th at p. 984.)

Senate Bill 1437 also added section 189, subdivision (e), to limit application of the felony-murder rule. Before the addition of that section, the felony-murder doctrine had allowed accomplices to be liable for murder "simply by participating in certain felonies

4

with the killer." (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1164, review granted May 1, 2024, S284232.) But the doctrine as now limited by section 189, subdivision (e), allows accomplices to a felony to be held responsible for a cohort's act of murder only if the accomplice "with the intent to kill" aided and abetted "the actual killer" in committing murder in the first degree or the accomplice was a "major participant in the underlying felony and acted with reckless indifference to human life." (See also *People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)

Senate Bill 1437 created a procedure, codified at section 1172.6, for a person convicted of murder under the former law to be resentenced if the person could no longer be convicted of those crimes under the current law. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Gentile*, *supra*, 10 Cal.5th at p. 847.) A defendant commences that procedure by filing a petition containing a declaration that, among other things, the defendant could not presently be convicted of murder under the current law. (*Strong*, *supra*, 13 Cal.5th at p. 708.)

At this prima facie stage, the trial court takes as true the petitioner's factual allegations and assesses whether the petitioner would be entitled to relief if those allegations were proved. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) In determining whether the petitioner has made a prima facie case for relief, the trial court may look at the record of conviction, including jury instructions, verdicts and closing argument, to determine readily ascertainable facts such as the crime of conviction. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see, e.g., *People v. Harden* (2022) 81 Cal.App.5th 45, 56.) When the conviction resulted from a plea, the record of conviction includes the plea colloquy and the facts the defendant admitted as a factual basis

5

for the plea.  (*People v. Gallardo* (2017) 4 Cal.5th 120, 136; *People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211–1212; *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1028.)

At the prima facie stage, the trial court does not engage in fact finding that involves weighing evidence or exercising discretion.  (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  If a petition establishes a prima facie case for relief, the trial court must appoint counsel if requested, issue an order to show cause, and hold an evidentiary hearing at which the parties may offer new or additional evidence and the trial court sits as an independent factfinder to determine beyond a reasonable doubt whether the defendant is guilty of murder under a valid theory.  (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745.)

But if at the prima facie stage the record of conviction establishes that the petition is meritless, the trial court may dismiss it.  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  To deny a petition at the prima facie stage, the record of conviction must demonstrate the petitioner is ineligible for relief as a matter of law.  (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)  We review the denial of a petition at the prima facie stage de novo.  (*Ibid.*)

## II.    The record of conviction established Sullivan's ineligibility for resentencing

Sullivan agrees that his plea and stipulation to the factual basis are part of the record of conviction, but he disagrees that he admitted any facts precluding him from resentencing under section 1172.6.  As we now explain, the facts Sullivan stipulated to establish he was convicted of attempted murder as a direct aider and abettor.

Direct aiding and abetting remains a valid theory of attempted murder liability after the passage of Senate Bill 1437.

6

(*People v. Gentile, supra,* 10 Cal.5th at p. 850; *People v. Curiel* (2023) 15 Cal.5th 433, 462; *People v. Coley* (2022) 77 Cal.App.5th 539, 548.)  To establish liability under that theory, the prosecution must establish that the " 'defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.' " (*Curiel*, at p. 466.)  " '[T]o be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)

Here, Sullivan admitted he and his accomplices "discussed committing a retaliatory murder against Athens Park Blood." Two of Sullivan's accomplices then armed themselves, the men drove two cars into Athens Park territory, Sullivan's car was driven in a way to distract law enforcement and rival gang members, and someone from Wilson and Foster's car fired shots at individuals within Athens Park territory.  Sullivan's admission that he discussed committing murder established that he knew the shooter's intent to kill.  His admission that he was in the "follow car" to the "lead car" established that he shared a murderous intent and engaged in indirect acts to encourage and further the attempted murder.  Therefore, Sullivan was convicted of attempted murder as a direct aider and abettor who had the intent to kill.

We are unpersuaded by Sullivan's argument that these admissions fail to establish he *agreed* to commit murder.  True,

7

Sullivan did not stipulate to those specific words. But there is no other interpretation of Sullivan's admissions. A discussion was had about committing murder, men armed themselves, they all drove into gang territory, and Sullivan's accomplices shot at people. That is direct aider and abettor liability for attempted murder.

Sullivan, however, argues that the charging document allowed him to be prosecuted under the natural and probable consequences doctrine. That is, when murder (or, as here, attempted murder) is charged generically, the prosecution is not limited to pursing any particular theory and may proceed on any theory of murder. (*People v. Eynon* (2021) 68 Cal.App.5th 967, 977.) But the charging document is not particularly relevant where, as here, Sullivan entered into a plea, stipulated to a factual basis for the plea, and that factual basis established he was convicted as a direct aider and abettor and not under any now-invalid theory.

Sullivan also asserts that had he rejected the plea and instead gone to trial, the prosecution could have proceeded under a now-invalid theory that he agreed to participate in an assault with a deadly weapon, the natural and probable consequence of which was attempted murder. But that is not what happened. Sullivan did not go to trial. He entered into a plea. Therefore, we have no occasion to speculate about what might have happened at a trial that never occurred. Were we required to do so, then it would be the rare pleading petitioner who could not establish a prima facie case for section 1172.6 relief. But opening up relief to almost all defendants who entered a plea is not what section 1172.6 was designed to do. (See *Strong, supra,* 13 Cal.5th at p. 715 [§ 1172.6 "does not open resentencing to every

8

previously convicted murder defendant"].)  Rather, just "as a defendant convicted following a jury trial cannot show eligibility for relief under section 1172.6 by asserting there may have been *other* evidence not adduced at trial that would have allowed the jury to make findings inconsistent with current law, a defendant convicted by plea cannot show eligibility for relief by asserting the People could have prosecuted him based on invalid theories when the record conclusively establishes that at the time of the plea, the People were operating under only one theory of the defendant's guilt, and that theory is still valid under current law." (*People v. Muhammad* (2024) 107 Cal.App.5th 268, 277, review granted Feb. 19, 2025, S288860.)

## DISPOSITION

The order denying Karengha Sullivan's Penal Code section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.          ADAMS, J.

9